```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                Civil No. 11-533(DSD/FLN)
```

The Netherlands Insurance
Company, a New Hampshire
corporation,

       Plaintiff,

v.                                               **ORDER**

Main Street Ingredients, LLC,
a Wisconsin limited liability
company, and Malt-O-Meal Company,
a Minnesota corporation,

       Defendants.

    Suzanne L. Jones, Esq., Paulette S. Sarp, Esq. and
    Hinshaw & Culbertson LLP, 333 South Seventh Street, Suite
    2000, Minneapolis, MN 55402, counsel for plaintiff.

    Lauren E. Lonergan, Esq., Maren F. Grier, Esq., Michael
    H. Streater, Esq. and Briggs & Morgan, PA, 80 South
    Eighth Street, Suite 2200, Minneapolis, MN 55402, counsel
    for defendant.

This matter is before the court upon the motion for summary judgment by plaintiff The Netherlands Insurance Co. (Netherlands) and the motion for partial summary judgment by defendant Main Street Ingredients (MSI). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion by the defendant.

**BACKGROUND**

This insurance-coverage dispute arises out of a recall of instant milk. In 2007, MSI purchased instant milk from nonparty

Plainview Milk Products Cooperative (Plainview) and resold the milk to America Cereal Corporation, a subsidiary of Malt-O-Meal Company (MOM).[1]  Schmitz Decl. ¶ 3.  As part of its contract with MOM (Underlying Contract), MSI guaranteed "that all articles comprising each shipment or other delivery ... will not be adulterated or misbranded within the meaning of [the Federal Food, Drug, and Cosmetic Act]."  Jones Aff. Ex. B, at 007470.

In 2009, the Food and Drug Administration (FDA) detected insanitary conditions and salmonella at the Plainview manufacturing facility.  See Streater Decl. Ex. E, at 000257.  As a result, on June 23, 2009, Plainview issued a recall of all instant milk dating back to 2007, including the milk MSI sold to MOM.  Moe Dep. 116:25-117:4.  Plainview notified its customers to alert "all downstream cosignees who may have received these recalled products."  Schmitz Decl. Ex. A, at 1.  As a result, MSI forwarded the notice to MOM on June 26, 2009, and MOM initiated a recall of its instant oatmeal.  Id. ¶ 7; id. Ex. B; Streater Decl. Ex. I, at 2-3.  At no point did MSI's instant milk test positive for salmonella.

On October 7, 2009, MOM filed suit against MSI and Plainview in Hennepin County District Court (Underlying Action), seeking damages resulting from the recall.  Streater Decl. Ex. A.  MSI notified Netherlands, its insurance carrier, of the Underlying

---

[1] Netherlands also brought suit against MOM.  On August 31, 2012, MOM was dismissed as a party pursuant to the stipulation of Netherlands and MSI.  See ECF No. 49.

Action.  Schmitz Decl. ¶ 4.  MSI had a commercial general liability policy (Policy) with Netherlands.  The Policy covered property damage up to $1,000,000 per occurrence and up to $2,000,000 total. Id. Ex. D, at 000885.

The Policy provided that Netherlands "will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or 'property damage' to which this insurance applies. [Netherlands] will have the right and duty to defend the insured against any suit seeking those damages."  Id. § I(1)(a).[2]  The Policy provided coverage for property damage if it "is caused by an 'occurrence' that takes place in the coverage territory."  Id. § I(1)(b)(1).  Netherlands agreed to defend MSI in the Underlying Action but reserved the right to deny coverage.  Id. ¶ 5.

On April 16, 2012, the court in the Underlying Action denied cross-motions for summary judgment on the breach of contract and breach of warranties claims.[3]  Streater Decl. Ex. G, at 1.  The court found that fact questions - namely, whether the instant milk was actually contaminated with salmonella and whether it was

---

[2] All defined terms are identified within the Policy by quotation marks.  For clarity and ease of reading, the court removes this emphasis for non-pertinent defined terms.

[3] The court granted summary judgment for MSI on MOM's strict liability claim.  Streater Decl. Ex. G, at 1.

manufactured under insanitary conditions - precluded summary judgment. <u>Id.</u> at 10-11. With these claims outstanding, MSI and MOM settled the Underlying Action for $1.4 million. <u>Id.</u> ¶ 13.

On March 2, 2011, prior to settlement in the Underlying Action, Netherlands filed this action, seeking a declaration that it had no duty to defend[4] or indemnify MSI. MSI counterclaimed on April 11, 2011, seeking a declaration that Netherlands was obligated to defend and indemnify. Both parties move for summary judgment.

## DISCUSSION

### I. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that it could

---

[4] The Policy provides that Netherlands has a duty to defend MSI against any suit seeking "damages because of ... 'property damage' to which this Insurance applies." Schmitz Decl. Ex. D, § (I)(1)(a). For the reasons that follow, the court determines that the Policy applied to the damages in question. As such, Netherlands had a duty to defend MSI in the Underlying Action.

4

cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Celotex, 477 U.S. at 322-23.

**II.  Choice of Law**

State law governs the interpretation of insurance policies. Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003). Netherlands argues that Minnesota law should apply, as MOM, Plainview, and the insurance office that issued the Policy are all located in Minnesota.  MSI responds that Wisconsin law should apply, as MSI is a Wisconsin corporation. Moreover, MSI argues that the locations of MOM and Plainview are irrelevant to its contractual relationship with Netherlands.

5

"In determining which state's law applies, [the court] employ[s] the forum state's choice-of-law rules." <u>Whitney v. Guys, Inc.</u>, 700 F.3d 1118, 1123 (8th Cir. 2012) (citation omitted). Minnesota's choice-of-law analysis first requires a court to determine "whether the different states' laws actually present a conflict." <u>Id.</u> "A conflict exists if the choice of one forum's law over the other will determine the outcome of the case." <u>Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.</u>, 604 N.W.2d 91, 93-94 (Minn. 2000) (citations omitted). The court finds no conflict between Minnesota and Wisconsin law on any determinative issue, and a choice of law need not be made. For purposes of this order, because the court grants MSI's motion, the court applies Minnesota law, Netherlands' favored choice of law.

**III.   Insurance Coverage**

Under Minnesota law, a court interprets an insurance policy in accordance with general principles of contract construction, giving effect to the intent of the parties. <u>Thommes v. Milwaukee Ins. Co.</u>, 641 N.W.2d 877, 879-80 (Minn. 2002). Unambiguous language is given its plain and ordinary meaning. <u>Id.</u> at 880. Ambiguous language is construed against the drafter and in favor of the insured. <u>Nathe Bros. v. Am. Nat'l Fire Ins. Co.</u>, 615 N.W.2d 341, 344 (Minn. 2000). "The insured bears the initial burden of proving prima facie coverage ... under a liability insurance policy." <u>Remodeling Dimensions, Inc. v. Integrity Mut. Ins. Co.</u>, 819 N.W.2d

602, 617 (Minn. 2012) (citation omitted). "An insurer has the burden of proving a policy exclusion applies." Hubred v. Control Data Corp., 442 N.W.2d 308, 310 (Minn. 1989) (citation omitted). Policy exclusions are strictly construed against the insurer. Thommes, 641 N.W.2d at 880.

## A. Prima Facie Coverage

"[T]o establish a duty to indemnify, the insured must prove that *all* claims alleged in the complaint fall within the policy coverage." Reinsurance Ass'n of Minn. v. Timmer, 641 N.W.2d 302, 308 (Minn. Ct. App. 2002). Where, as here, the action settles before trial, "[t]he party seeking indemnification need only show it could have been liable under the facts shown at trial[,] not whether they would have been." Jackson Nat'l Life Ins. Co. v. Workman Sec. Corp., 803 F. Supp. 2d 1006, 1012 (D. Minn. 2011) (emphasis and citations omitted). This is only true, however, when "the settlement in the underlying action included claims for risks [the insurer] agreed to assume." St. Paul Fire & Marine Ins. Co. v. Nat'l Chiropractic Mut. Ins. Co., 496 N.W.2d 411, 415 (Minn. Ct. App. 1993).

The Policy provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of ... 'property damage.'" Schmitz Decl. Ex. D, § I(1)(a). To establish

prima facie coverage, MSI must demonstrate (1) an occurrence, (2) that the loss was not known prior to the Policy period, and (3) property damage.

### 1. "Occurrence"

The Policy provides liability coverage for property damage only if it is caused by an "occurrence." Schmitz Decl. Ex. D, § I(1)(b)(1). An occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. § V(13). Minnesota courts interpret "accident" in this context to mean "an unexpected, unforeseen, or undesigned happening or consequence from either a known or an unknown cause." Hauenstein v. St. Paul-Mercury Indem. Co., 65 N.W.2d 122, 126 (Minn. 1954) (citations omitted).

Netherlands argues that the Underlying Action was premised on MSI's breach of the Underlying Contract. Specifically, Netherlands argues that failure to comply with contractual obligations cannot constitute an occurrence. See Reinsurance Ass'n of Minn. v. Timmer, 641 N.W.2d 302, 312 (Minn. Ct. App. 2002) ("Typically, insurance policies do not provide coverage for contractual liabilities, essentially because those liabilities are not based on an 'accident' arising from an 'occurrence.'" (citation omitted)). Contractual liabilities arising from accidents, however, can constitute an occurrence. See Ohio Cas. Ins. Co. v. Terrace Enters., Inc., 260 N.W.2d 450, 452-53 (Minn. 1977) (finding breach-

of-contract occurrence based on negligent construction). The occurrence analysis turns on "whether there was an accident for purposes of coverage, [and] lack of specific intent to injure will be determinative." Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 612 (Minn. 2001); see also W. Nat. Mut. Ins. Co. v. Frost Paint & Oil Corp., No. C3-97-1118, 1998 WL 27247, at *1 (Minn. Ct. App. Jan. 27, 1998) ("[T]here is an occurrence as long as the insured did not engage in conscious wrongdoing." (citations and internal quotation marks omitted)). Here, there is no evidence in the record suggesting MSI intended to injure MOM. Indeed, MSI first received notice of the potential contamination almost two years after selling the milk to MOM. Schmitz Decl. ¶ 3. Therefore, the recall of the instant milk was an occurrence.

### 2. "Known Loss" Provision

The "known loss" provision provides that coverage applies only if "[p]rior to the policy period, no insured ... and no employee authorized by [the insured] to give or receive notice of an 'occurrence' or claim, knew that the bodily injury or 'property damage' had occurred, in whole or in part." Schmitz Decl. Ex. D, § I(1)(b)(3). Under Minnesota law, "property damage occurs at the time the complaining party was actually damaged" rather than when the injury manifests itself. Fairview Hosp. & Health Care Servs. v. St. Paul Fire & Marine Ins. Co., 518 N.W.2d 41, 43 (Minn. Ct. App. 1994) (citations and internal quotation marks omitted). As

9

such, the damage occurred when the instant milk was blended into the oatmeal between January 2, 2008, and June 4, 2009. However, Netherlands presented no evidence that anyone from MSI was aware of the damage until MSI received notice of the recall from Plainview on June 23, 2009. The court concludes that MSI did not have knowledge of the damage prior to the 2008 and 2009 Policy periods. Therefore, the known loss provision does not preclude coverage.

### 3. "Property Damage"

Property damage is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." Schmitz Decl. Ex. D, § V(17)(a)-(b). Because the instant milk never tested positive for salmonella in the Underlying Action, Netherlands argues that there was no property damage. MSI responds that the FDA found insanitary conditions in the Plainview manufacturing facility, and that this determination rendered the instant milk adulterated, thereby creating property damage. See 21 U.S.C. § 342(a)(2)(C)(4) ("A food shall be deemed to be adulterated ... if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health.").

Netherlands cites Source Food Technology, Inc. v. United States Fidelity & Guaranty Co., 465 F.3d 834 (8th Cir. 2006), to support its argument. In Source Food, the Eighth Circuit found

10

that a company's inability to import its beef due to a U.S. Department of Agriculture embargo on Canadian beef did not amount to "direct physical loss" of the beef. Id. at 838 (applying Minnesota law). Netherlands argues that regulatory measures are insufficient to demonstrate property damage absent a finding of actual contamination. The instant matter is distinguishable, however. First, the Policy language at issue here is "physical injury," not the more restrictive "direct physical loss" that was at issue in Source Food. Moreover, the beef in Source Food was not adulterated but was merely unable to be shipped because of its country of origin. Here, the oatmeal is physically affected, as it includes instant milk that was manufactured in insanitary conditions. The comparison to Source Food is unavailing.

Moreover, under Minnesota law, the inability "to lawfully distribute ... products because of FDA regulations" is "an impairment of function and value sufficient to support a finding of physical damage." Gen. Mills, Inc. v. Gold Medal Ins. Co., 622 N.W.2d 147, 152 (Minn. Ct. App. 2001); see United Sugars Corp. v. St. Paul Fire & Marine Ins. Co., No. A06-1933, 2007 WL 1816412, at *3 (Minn. Ct. App. June 26, 2007) (applying General Mills in third-party liability context to hold "an adulterated food product can be deemed physically damaged because it is legally unsaleable"). Therefore, the court finds that property damage is present.

11

Netherlands next argues that, even if there was property damage, the damages from the settlement are not covered. Specifically, Netherlands argues that the damages MOM sought - destroyed inventory, credits and fees to customers, recall freight and additional costs - are purely economic and not property damage. See Jones Aff. Ex. U. The Policy, however, covers not only property damage, but damages MSI must pay *because of* property damage. "[A]lthough lost profits or other consequential damages do not constitute property damage, they are sums for which [the insured may be] liable ... because of ... property damage." Reinsurance Ass'n of Minn. v. Timmer, 641 N.W.2d 302, 314 (Minn. Ct. App. 2002) (interpreting substantially-similar language); see also W. Nat'l Mut. Ins. Co. v. Frost Paint & Oil Corp., No. C3-97-1118, 1998 WL 27247, at *3 (Minn. Ct. App. Jan. 27, 1998) ("[I]n the absence of specific language to exclude consequential damages, we decline to add additional qualifying language ...." (citation omitted)). The court concludes that property damage occurred and Netherlands' argument is without merit.[5] Therefore, MSI has made

---

[5] Netherlands also argues that MSI's statements in the Underlying Action that the milk was not adulterated or produced in insanitary conditions constitute judicial admissions, and that MSI should be estopped from now arguing that the milk was adulterated. The doctrine of judicial estoppel "is intended to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." State v. Pendleton, 706 N.W.2d 500, 507 (Minn. 2005) (citation and internal quotation marks omitted). "The Minnesota Supreme Court has not decided if judicial estoppel exists in Minnesota." Nat'l Union Fire Ins. Co. of
(continued...)

(continued...)

a prima facie showing of coverage and the court examines whether an exclusion applies.

### B.   Policy Exclusions

Netherlands argues that even if MSI can establish a prima facie showing of coverage, several exclusions apply to preclude coverage.

#### 1.   "Your Product" Exclusion

Netherlands first argues that the recall falls within the "your product" exclusion. The Policy excludes from coverage "'[p]roperty damage' to 'your product' arising out of it or any part of it." Schmitz Decl. Ex. D, § I(2)(k). "Your product" is defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) [MSI]; (b) [o]thers trading under [MSI's] name; or (c) [a] person or organization whose business or assets [MSI has] acquired," including "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your product.'" Id. § V(21)(a)-(b).

---

⁵(...continued)
Pittsburgh, Pa. v. Donaldson Co., No. 10-4948, 2012 WL 1072329, at *9 (D. Minn. Mar. 30, 2012) (citation omitted). Even if Minnesota recognizes judicial estoppel, however, "the party presenting the allegedly inconsistent theories must have prevailed in its original position" for a court to invoke the doctrine. Pendleton, 706 N.W.2d at 507 (citation omitted). In this case, MSI did not prevail in its original argument, and they are not estopped from arguing that the milk was adulterated.

13

Netherlands argues that the exclusion applies because the instant milk was MSI's product, and because the Underlying Action alleged a breach of MSI's warranties. MSI seeks indemnity not for damage to its milk, however, but for damage to the MOM oatmeal caused by the inclusion of the milk. That the Underlying Action alleged breach of warranties does not change the fact that MSI seeks coverage for damage to a third-party's product. Indeed, to apply a "sweeping interpretation of the 'damage to your product' exclusion which precludes coverage whenever an insured's product proximately causes a third-party to suffer property damage would eviscerate coverage entirely." Hartzell Indus., Inc. v. Fed. Ins. Co., 168 F. Supp. 2d 789, 798 (S.D. Ohio 2001) (interpreting substantially-similar language). As a result, the "your property" exclusion does not bar coverage.

### 2.  "Impaired Property" Exclusion

Netherlands next argues that the "impaired property" exclusion precludes coverage. The Policy excludes coverage for:

> "Property damage" *to "impaired property" or property that has not been physically injured*, arising out of:
>
> (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or your work; or
> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Schmitz Decl. Ex. D, § (I)(2)(m)(1)-(2) (emphasis added). As already explained, the oatmeal was physically injured by the

14

inclusion of the adulterated milk, and the exclusion bars coverage only if the oatmeal is "impaired property."

"Impaired property" is defined, in relevant part, as "tangible property, other than 'your product' or your work, that cannot be used or is less useful because ... [it] is known or thought to be defective, deficient, inadequate or dangerous." Id. § V(8). Property is not impaired if it can be restored to use by "[t]he repair, replacement, adjustment or removal of 'your product' or your work." Id. The adulterated milk, however, could not possibly be removed from MOM's oatmeal since the ingredients were inextricably blended together. Id. ¶ 8. The instant oatmeal was not impaired property, and the "impaired property" exclusion does not preclude coverage.

### 3.  "Recall" Exclusion

Netherlands next argues that the recall exclusion precludes coverage. Specifically, Netherlands argues that MSI is seeking indemnity for recall of the instant milk, not the oatmeal. The Policy excludes from coverage:

> Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:
> (1) "Your product";
> (2) "Your work"; or
> (3) "Impaired property";
> if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a

15

>    known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Id. Ex. D, § I(2)(n).  MSI responds that they are seeking indemnity for damages from MOM's recall of the oatmeal.  The court agrees. As already discussed, the oatmeal was not MSI's product and was not impaired property.  Moreover, this type of exclusion "has no applicability when the claim is for property damage claimed to have been suffered by another property owner."  Newark Ins. Co. v. Acupac Packaging, Inc., 746 A.2d 47, 56 (N.J. Super. Ct. App. Div. 2000) (citations omitted) (interpreting substantially-similar provision).  Here, MOM sought damages for its own product in the Underlying Action.  Therefore, the "recall" exclusion does not bar coverage, and Netherlands has not demonstrated that a policy exclusion applies.

### IV.  Declaratory Judgment

Both parties seek a declaration of their rights under the Policy.  As already explained, MSI established a prima facie case of coverage, and Netherlands did not establish that an exclusion applies.  Therefore, a declaratory judgment in favor of MSI is warranted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment [ECF No. 34] is denied; and

16

2.   Defendant's motion for partial summary judgment [ECF No. 40] is granted.

Dated:   January 8, 2013

                                                s/David S. Doty
                                                David S. Doty, Judge
                                                United States District Court